IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEBORAH ANN PRUITT**                                                                   **PLAINTIFF**

V.                                                                 CAUSE NO. 3:19-CV-667-CWR-FKB

**SIMPSON COUNTY, MISSISSIPPI,**                                    **DEFENDANTS**
et al.

## ORDER

Before the Court is defendants' Motion to Dismiss plaintiff's Third Amended Complaint. Docket No. 23. After careful review, the motion is granted.

**I.**      **Factual and Procedural History**

This case arises out of a series of interactions between Deborah Ann Pruitt and the Simpson County Sheriff's Department. Plaintiff tells of these interactions through her Third Amended Complaint (TAC).

On January 3, 2015, Pruitt's vehicle got stuck on private property in Braxton, Mississippi. As the evening approached, Pruitt walked to go get help. While searching for assistance, Pruitt flagged down Simpson County Sheriff's Deputy Kathryn McMillian. Pruitt asked McMillian to take her to a family member's house in the area. McMillian acquiesced to Pruitt's request and drove to her relative's home, but once there, Pruitt refused to get out because the porch lights were off. Thereafter, Pruitt was taken to the Simpson County 911 Center, where she was interrogated by Deputy McMillian, Deputy John Kilpatrick, and Sergeant Marvin Miller for refusing to get out of the car. Pruitt was then "forced" to take the defendants to the site of her stuck car, at which point the Simpson County officers locked her in the backseat of a patrol vehicle, forcibly took her keys, and searched her car without her consent. Deputy Kilpatrick claimed that he found marijuana inside the vehicle, after which Pruitt was taken out of the deputy's car and handcuffed by Deputy

McMillian without explanation until Sergeant Miller informed the deputies of their wrongdoing. Afterward, Deputy McMillian "kneekicked" Pruitt in the back as she walked away.

Once Pruitt was released, she arrived at a family member's home where she discovered a citation for drug paraphernalia inside her purse written by Deputy McMillian.

Three days later, Pruitt went to the Simpson County Sheriff's Department to file a complaint against Deputy McMillian. After waiting for over two hours, Pruitt became uneasy and went to the Mendenhall Library. According to Pruitt, once inside the library, Deputy McMillian, dressed in civilian clothing, pulled up and jumped out of a patrol car, stopped her, and asked her to walk backward. McMillian then placed Pruitt in the backseat of the patrol car without being informed for what purpose. Deputy Kilpatrick was then called to the library where he conducted a sobriety test on Pruitt. Pruitt was told that if she could walk in a straight line, she could leave. After doing so, however, she was then told she did not pass. Pruitt was then arrested and transported to the Simpson County Sheriff's Department. Once inside the jail, Pruitt had her blood drawn without her permission under Ted Blakeney's signature.

On January 6, 2015, Pruitt was charged with possession of paraphernalia, trespassing, false pretense/providing false information, and possession of burglary tools. According to the TAC, after being released on bond, Pruitt states that Deputy McMillian backdated the citation to January 3. On March 5, 2015, Pruitt then appeared in Simpson County Justice Court.

Pruitt returned to Simpson County Justice Court on November 5, 2015. She was found guilty on all charges except the possession of burglary tools charge, which was dismissed. She was fined $2,500 and was required to pay $1,000 before she could be released on bond. Pruitt then appealed her conviction to the Simpson County Circuit Court. On October 10, 2017, Circuit Court

Judge Stanley Sorey dismissed the 2015 charges because the case had sat on the court's docket for over 24 months.[1]

On January 4, 2017, Pruitt alleges that she was "kidnapped" by Deputy McMillian as the Simpson County court officials watched. Once inside the jail, Deputy James Morehead tried to get Pruitt to sign a backdated "No Contact Order," but Pruitt refused. Pruitt further states McMillian submitted a false and misleading affidavit for stalking with a blank date for January 2015 and then submitted a second false affidavit with a blank date for August 2016, neither of which was presented at her September 6, 2018 trial.

She was then charged with stalking and simple assault of Deputy McMillian. On September 6, 2018, Pruitt was found not guilty of simple assault but was found guilty of stalking. The following week, Pruitt filed a motion for a new trial. That motion was denied.

This action followed. Proceeding *pro se*, Pruitt sues Simpson County, the Simpson County Sheriff's Department, Donald O'Cain, in his official capacity, Deputy McMillian in her official and individual capacities, and Deputy Kilpatrick in his official and individual capacities. Specifically, Pruitt alleges violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.[2] She also alleges municipal liability against the County for negligent hiring and training as well as various state law claims.[3] Defendants now move to dismiss all claims against them.

---

[1] Pruitt alleges in her Complaint that she was found not guilty of these charges. However, the Order of Dismissal, attached as Exhibit G, shows that this assertion is incorrect. *See* Docket No. 16-7 at 4. "Since the case has been on the Court's docket for more than 24 months, it is hereby dismissed with prejudice." *Id.*

[2] The Complaint also avers claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). However, *Bivens* actions create an implied right of action against *federal* actors. Since, the Complaint only alleges claims against state actors, the Court will only address Pruitt's claims under § 1983.

[3] In her TAC, Pruitt alleges, from what the Court can surmise, the following state law claims: negligent infliction of emotional distress; "civil liability for false affidavits"; unlawful detention and confinement; "strict liability"; assault; harassment; stalking; and various violations of the Mississippi Constitution.

**II.     Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is axiomatic that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nevertheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). A satisfactory complaint will "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (quotation marks and citation omitted). This requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but the complaint need not have "detailed factual allegations." *Id.* at 678 (quotation marks and citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

**III.    Discussion**

As an initial matter, defendants argue that the Simpson County Sheriff's Department is not a party capable of being sued because it is not a distinct legal entity outside the county itself. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.1991). The Court agrees as it is well-established under Mississippi law that a sheriff's department is not a separate political subdivision amenable to suit. *See Brown v. Thompson*, 927 So.2d 733, 737 (¶ 12) (Miss. 2006). The Simpson County Sheriff's Department is not a proper party and is therefore dismissed.

Next, defendants contend that Pruitt's claims must be dismissed because they were brought after the statute of limitations had run. Defendants further assert that dismissal is proper under the *Heck* doctrine, which prohibits § 1983 claims that would undermine state court convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994). They also assert that Pruitt's claims do not state a claim for which relief can be granted.

### A. Statute of Limitations

Defendants first argue that all claims arising from the events that occurred in January 2015 fail to state a claim because they are barred by the statute of limitations. It is well-settled that a § 1983 action accrues when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987). Because § 1983 does not contain a statute of limitations, "[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Mississippi has a three-year statute of limitations for personal injury claims. Miss. Code. Ann. § 15-1-49; *James v. Sadler*, 909 F.2d 834, 836 (5th Cir.1990).

Pruitt complains of various constitutional violations that occurred on January 3 and 6, 2015. In particular, she alleges claims of unlawful arrest, unlawful search and seizure, unlawful detention, excessive force, and false imprisonment. Plaintiff's Complaint, however, was not filed until September 18, 2019, more than four years after the dates of the alleged violations. Consequently, these claims are barred by the three-year statute of limitations. Therefore, it is apparent from the face of the Complaint the statute of limitations bars her claims of unlawful search and seizure, unlawful detention, excessive force, and false imprisonment under § 1983. [4]

---

[4] The Supreme Court has stated that the statute of limitations for false imprisonment claims accrue "when the alleged false imprisonment ends." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). According to the TAC, Pruitt was released from

There are occasions when a slightly different analysis applies to unlawful arrest claims. Where the arrest is followed by criminal proceedings, the statute of limitations begins to run at the time the claimant becomes detained pursuant to legal process. *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008). This could occur when a plaintiff appears before a magistrate, is bound over for trial, is arrested pursuant to a warrant, or is indicted. *Wallace v. Kato*, 549 U.S. 384, 391 (2007). For an arrest occasioned by the wrongful institution of the legal process or an arrest pursuant to a warrant issued through the normal legal process may be more similar to malicious prosecution; when that happens, the Fifth Circuit has held that the Fourth Amendment claim accrued on the date of a favorable termination of proceedings against the plaintiff. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018).

In this case, the exact date Pruitt was detained pursuant to "legal process" is not apparent from the pleadings. According to the TAC, Pruitt was released on bond on January 6, 2015.[5] She also states that she made an appearance on her charges in Simpson County Justice Court on March 5, 2015. At the latest, this "legal process" occurred in March 2015. Whether measured from the date of her bond or the date of her March 5, 2015 appearance, her claim had long run when Pruitt sued in September 2019.[6] Thus, this claim should also be dismissed.

### B. The *Heck* Doctrine

Next, defendants argue that Pruitt's claims arising out of her 2018 stalking conviction are barred by the *Heck* doctrine. In *Heck*, the Supreme Court held that § 1983 claims are generally prohibited if their success necessarily implies the invalidity of an underlying state court conviction.

---

Simpson County custody on January 3, 2015, and was released on bond on January 6, 2015. Thus, Pruitt's false imprisonment claims began to accrue on both January 3 & 6, 2015, respectively.

[5] "[A] bond hearing satisfies the definition of legal process within the meaning of *Wallace* . . . ." *Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012). However, there is nothing in the record that states that she was given a *hearing*. So out of an abundance of caution, the Court will consider both dates, either of which bars Pruitt's claim.

[6] As explained more fully below the later date of *favorable* termination of proceedings does not apply because that never occurred.

6

512 U.S. at 486–87. Accordingly, the *Heck* doctrine "requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (citation and quotation marks omitted). Therefore, plaintiff must show that her state court conviction has been reversed, expunged, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486–87; *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000).

*Heck* also "bar[s] claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure." *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012) (per curiam) (citation omitted). The Fifth Circuit has also "specifically noted that false-arrest and malicious-prosecution claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity." *Id.* (citation omitted).

Here, Pruitt alleges claims of unlawful arrest, conspiracy, unlawful search and seizure, malicious prosecution, and false imprisonment stemming from her 2017 altercation with Deputy McMillian. However, as evidenced by the Complaint and the exhibits attached, Pruitt was convicted of stalking McMillian on September 6, 2018. Docket No. 16-9. Plaintiff has not asserted that her 2018 conviction has been overturned, nor has she averred that any exception to *Heck* applies.

Plaintiff's claims would, if true, necessarily implicate the validity of her conviction. Indeed, to allow plaintiff to proceed with these claims would directly call into question the constitutionality and legality of her conviction. Because Pruitt's conviction has not been overturned, her § 1983 claims against defendants are barred by *Heck. See, e.g.*, *Hudson v. Hughes*,

7

98 F.3d 868, 872–73 (5th Cir. 1996) (holding that allegations of excessive force and false arrest are not cognizable under *Heck* if the claim would call into question the validity of the plaintiff's conviction).

Similarly, the Fifth Circuit has applied the *Heck* doctrine to 42 U.S.C. § 1985 actions. *See, e.g.*, *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008). Like her § 1983 claims, these allegations would call into question her state court conviction, which, in turn, would violate *Heck*. As such, these claims must be dismissed.

### C. Municipal Liability Under 42 U.S.C. § 1983

Next, defendants argue that Pruitt's claims against the County should be dismissed because she has failed to plausibly allege any constitutional violation. The Court agrees. "[I]nadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). In this case, Pruitt cannot maintain her municipal claims because, for the reasons stated above, she has failed to allege a constitutional violation. Therefore, these claims must also be dismissed.[7]

### D. State Law Claims

Pruitt also brings state law claims for negligent infliction of emotional distress, "civil liability for false affidavits," unlawful detention and confinement, "strict liability," assault, harassment, stalking, and others sounding in violations of the Mississippi Constitution. A district court "may decline to exercise supplemental jurisdiction over a claim" after the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A federal court should generally dismiss pendent state law claims upon eliminating the federal claims. *See*

---

[7] Similarly, to the extent Pruitt asserts claims against the defendants in their official capacities, the Court finds these claims also fail for lack of an underlying constitutional violation. *See Piotrowski*, 237 F.3d at 578 (holding municipal liability under § 1983 requires "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." (citation omitted)).

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because Pruitt's federal claims—the only claims over which the Court has original jurisdiction—are due to be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. As such, Pruitt's state law claims are due to be dismissed without prejudice to their refiling in state court.

**IV.    Conclusion**

For the foregoing reasons, defendants' motion to dismiss is granted. It is further ordered that all pending motions are denied as moot. A separate final judgment shall issue.

**SO ORDERED**, this the 24th day of May, 2021.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE